VUTCI v INDIANAPOLIS LIFE INSURANCE COMPANY

Docket No. 84440. Submitted May 22, 1986, at Detroit. Decided
    February 2, 1987.
    Peter Vutci, sixty-four years old and in questionable health, was
      persuaded by Nancy J. Adams, an agent for Indianapolis Life
      Insurance Company (ILIC), to cancel an existing life insurance
      policy issued by ILIC and apply for a new policy. The new policy
      was issued. Twenty months later, Vutci died. ILIC refused to
      honor the new policy on the ground that Vutci had made
      material misrepresentations concerning his health when he
      applied for the new policy. Robert F. Vutci, representing the
      minor beneficiaries of the insurance policy, filed suit against
      ILIC in Wayne Circuit Court alleging that ILIC had breached the
      contract of insurance under the new policy and had misled
      Peter Vutci into believing he was adequately insured by accept-
      ing his premium payments on the new policy and that ILIC
      therefore was estopped from dishonoring the policy. The action
      was removed to the United State District Court for the Eastern
      District of Michigan based on diversity of citizenship between
      the parties. Plaintiff then made a motion to add Nancy J.
      Adams as a party defendant and to include against her claims
      of negligence and breach of an implied contract to properly
      advise Peter Vutci. The court, Avern Cohn, J., denied plaintiff's
      motion to amend his complaint on the ground that adding
      Adams would destroy total diversity and granted summary
      judgment in favor of ILIC on the ground that there was no
      genuine issue of material fact as to whether Peter Vutci had
      made material misrepresentations in applying for the new
      insurance policy. Robert F. Vutci, as personal representative of
      the estate of Peter Vutci, deceased, then filed suit against ILIC
      and Adams in Wayne Circuit Court alleging negligence and

REFERENCES
Am Jur 2d, Abatement, Survival, and Revival § 125.
Am Jur 2d, Contracts § 3.
Am Jur 2d, Insurance §§ 138 *et seq.*
Am Jur 2d, Judgments §§ 394 *et seq.*; 404 *et seq.*
See the annotations in the Index to Annotations under Insurance
    Agents and Brokers; Contracts; Limitations of Actions; Res Judi-
    cata.

breach of an implied contract to properly advise Peter Vutci. Defendants moved for accelerated judgment and summary judgment alleging that plaintiff's claims were precluded by application of the doctrines of res judicata and collateral estoppel, that the claims were barred by the statute of limitations, and that plaintiff had failed to state a claim upon which relief could be granted. The court, Michael L. Stacey, J., granted defendants' motions. Plaintiff appealed.

The Court of Appeals *held:*

1. Application of the doctrine of res judicata does not preclude plaintiff from making his present claims. The breach of contract claim in the prior federal court action did not arise out of the same transaction as plaintiff's negligence and implied contract claims in this action, and the federal district court's denial of plaintiff's motion to amend his pleadings to include his allegations of negligence and breach of an implied contract against Adams does not provide a basis for the application of res judicata to the allegations asserted by plaintiff in this action.

2. The doctrine of collateral estoppel does not apply to the issues raised by plaintiff in the present action and does not provide a basis for granting defendants' motion for accelerated judgment in this matter. None of the material factual or legal issues relevant to plaintiff's present claims were actually litigated in the prior federal court action.

3. The running of the period of limitation does not bar plaintiff's action and does not provide a basis for granting defendant's motion for accelerated judgment in this matter.

4. Plaintiff has stated valid claims against defendants. The granting of summary judgment to defendants based on plaintiff's alleged failure to state a claim is inappropriate.

Reversed and remanded.

MacKenzie, P.J., dissented from that part of the majority opinion holding that plaintiff's claim against ILIC is not barred by res judicata. She would hold that all plaintiff's claims against ILIC could have been raised by plaintiff in his federal action and, therefore, that a broad application of the doctrine of res judicata bars plaintiff's claims against ILIC in this action. She would affirm the trial court's grant of accelerated judgment as to defendant ILIC.

### Opinion of the Court

1. Judgments — Res Judicata.

Michigan law applies the broad rule of res judicata, barring not

only claims actually litigated but also those claims arising out of the same transaction which the plaintiff could have brought, but did not.

2. JUDGMENTS — RES JUDICATA — IDENTITY OF CLAIMS.

The test for determining identity of claims, in a case where a defendant seeks to invoke the doctrine of res judicata, is to consider the identity of facts essential to the maintenance of both actions, or whether the same evidence would sustain both, and if the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other.

3. JUDGMENTS — AMENDMENT OF PLEADINGS — RES JUDICATA.

A denial of a motion to amend a complaint because of undue delay is not a decision on the merits for purposes of the doctrine of res judicata.

4. LIMITATION OF ACTIONS — SURVIVAL OF ACTIONS — TOLLING.

The Revised Judicature Act provides that where a person dies before the period of limitation for bringing an action has run or within thirty days thereafter, an action which survives by law may be commenced within two years after letters testamentary or of administration are granted, although the period of limitation has run, but may not be commenced beyond three years after the period of limitation has run (MCL 600.5852; MSA 27A.5852).

5. INSURANCE — AGENT'S DUTY TO CLIENT.

An insurance agent has a duty to properly advise the insured when there is an established relationship between the agent and the insured and the agent has, in fact, advised the insured as to the adequacy of coverage.

6. CONTRACTS — IMPLIED CONTRACTS.

An implied contract exists where one engages or accepts beneficial services from another for which compensation is customarily made and naturally anticipated.

PARTIAL DISSENT BY MACKENZIE, J.

7. JUDGMENTS — RES JUDICATA — IDENTITY OF CLAIMS.

*The determination of identity of claims, without more, in a case where a defendant seeks to invoke the doctrine of res judicata does not address the broad view of res judicata, i.e., whether the plaintiff is raising in a second suit an issue which could have been raised in a prior suit; if the claims against the defendant are based on a single transaction and could have*

*been raised by the plaintiff in an earlier suit, they are barred by the principles of res judicata.*

*Sullivan, Ward & Bone, P.C.* (by *Michelle A. Thomas*), for plaintiff.

*Meyer, Kirk, Snyder & Safford* (by *Ralph R. Safford* and *Patrick K. Rode*), for defendant.

*Jacobs & Miller* (by *Barry H. Somlyo*), of Counsel, for Nancy J. Adams only.

Before: MacKenzie, P.J., and Beasley and C. W. Simon,* JJ.

Beasley, J. On January 22, 1985, plaintiff, Robert Fred Vutci, personal representative of the estate of Peter Vutci, deceased, filed suit alleging that defendants, Indianapolis Life Insurance Company (ILIC) and its agent, Nancy J. Adams, had acted negligently in persuading Peter Vutci to cancel his existing life insurance policy and to purchase a replacement policy. Plaintiff also alleged that defendant Adams had breached an implied contract to properly advise Vutci in procuring appropriate life insurance coverage. Both defendants brought a motion for accelerated judgment and summary judgment under GCR 1963, 116.1(5) and 117.2(1), now MCR 2.116(C)(7) and (8), alleging that plaintiff's claims were precluded by application of the doctrines of res judicata and collateral estoppel, that plaintiff's claims were barred by the statute of limitations, and that plaintiff had failed to state a claim upon which relief could be granted. The trial judge granted defendants' motion and dismissed plaintiff's complaint without identifying the specific basis for

---

* Circuit judge, sitting on the Court of Appeals by assignment.

granting defendants' motion. Plaintiff appeals as of right.

Our review of the record reveals the long factual and procedural history of this case. Defendant ILIC issued a life insurance policy with a face value of $17,000 to Peter Vutci in 1966. Allegedly, defendant Adams, the agent of ILIC, visited Peter Vutci on March 1, 1979, and advised him to cancel his existing life insurance policy and to apply for a new life insurance policy from ILIC. The record reveals that as of March 1, 1979, Peter Vutci had borrowed $5,000 against his existing life insurance policy. Allegedly, defendant Adams advised Vutci that he could cancel his existing policy and convert it into a paid up policy with a face value of $1,000.

Adams also allegedly persuaded Vutci to purchase a new ILIC life insurance policy with a face value of $18,055. Plaintiff alleges that Adams, in assisting Peter Vutci to apply for the new life insurance policy and in order to obtain her sales commission, advised him to make certain misrepresentations concerning his current state of health. Vutci was sixty-four years old when he applied for the new life insurance policy, and his health had recently deteriorated. He was a heavy smoker, suffered from diabetes and had a history of recent hospitalizations at the time he applied for the new life insurance policy. In applying for the new policy, Vutci expressly denied being a smoker, suffering from diabetes or having been hospitalized in the past.

ILIC issued the new life insurance policy to Vutci on September 1, 1979. Vutci had paid $100 per month in premiums on the new policy since March, 1979, and he continued to make these premium payments until his death on November 12, 1980. Following Vutci's death, plaintiff, Vutci's

son, demanded that ILIC pay the face value amount of the new policy to the named beneficiaries, Vutci's two minor grandsons. On April 10, 1981, the ILIC formally notified plaintiff that it would not honor the policy and tendered a check representing the amount of premiums that had been paid by Peter Vutci on the new policy.

On October 11, 1983, plaintiff, representing the minor beneficiaries, filed suit against ILIC in Wayne Circuit Court. Plaintiff alleged that ILIC, in failing to pay the face amount to the beneficiaries, had breached the contract of insurance under the new policy. Plaintiff also alleged that ILIC had misled Peter Vutci into believing he was adequately insured by accepting his premium payments on the new policy and, thus, ILIC was estopped from dishonoring the policy and that ILIC's refusal to pay was in "bad faith."

On November 15, 1983, ILIC petitioned to have plaintiff's action removed to the United States District Court for the Eastern District of Michigan, based on the total diversity of citizenship between the parties. The petition was granted and, in the federal district court, ILIC brought a motion for summary judgment claiming that Vutci's material misrepresentations concerning his health which he had made when he applied for the new insurance policy excused ILIC from liability under the policy. In responding to ILIC's motion for summary judgment, plaintiff took the deposition testimony of Nancy Adams on October 22, 1984. Plaintiff claims that this was the first time he became aware of Adams' dealings with Peter Vutci involving cancellation of the former life insurance policy and application for the new policy. Plaintiff then made a motion to amend his complaint in federal court so as to add Adams as a defendant and to include

his negligence and implied contract claims against Adams.

On January 3, 1985, Federal District Judge Avern Cohn granted ILIC's motion for summary judgment by finding that there was no genuine issue of material fact as to whether Vutci had made material misrepresentations in applying for the new insurance policy. Therefore, Judge Cohn dismissed plaintiff's claims which had all been based on a claim that ILIC had breached the terms and conditions of the new insurance policy. In addition, Judge Cohn denied plaintiff's motion to amend his complaint in order to add Adams as a defendant and to include his negligence and implied contract claims based on her role in persuading Vutci to cancel his former insurance policy. In denying plaintiff's motion, Judge Cohn expressly stated that the denial was without prejudice and was based on the fact that adding Adams as a defendant would destroy total diversity. Judge Cohn concluded that whatever wrong the agent committed, if any, must be decided in a different case than the then-existing federal court action.

Following the grant of summary judgment to ILIC on the breach of contract claim arising out of the new insurance policy, plaintiff, as the representative of Peter Vutci, filed the within case based on Adams' actions in persuading Vutci to cancel his old insurance policy and apply for the new policy. As previously indicated, defendants' motion for accelerated and summary judgment was granted by the trial judge.

On appeal, plaintiff first argues that the doctrines of res judicata and collateral estoppel do not apply in this situation as to either defendant. Plaintiff contends that his prior contract action that had been removed to the federal district court does not preclude him from raising his negligence

and implied contract claims in this separate, subsequent state court action.

In addressing plaintiff's argument concerning the possible res judicata effect of plaintiff's federal action, we first note that the fact that the federal court action was brought under a breach of an express contract theory while the within action is brought under negligence and breach of implied contract theories does not necessarily render the doctrine of res judicata inapplicable. The Michigan Supreme Court has adopted the "broad" application of the res judicata doctrine, barring both claims actually litigated in the prior action and those claims arising out of the same transaction which plaintiff could have brought, but did not.[1] Therefore, if plaintiff's negligence and breach of implied contract claims asserted in this action arise out of the same transaction as the express contract claim actually litigated in the prior federal court action, the doctrine of res judicata would apply in this situation. However, if the present claims do not arise out of the same transaction as the claim litigated in the federal action, the doctrine of res judicata does not apply.

On appeal, the parties agree that the test in *Mazzola v Vineyard Homes, Inc,*[2] as to whether two claims arise out of the same transaction and are identical for res judicata purposes, is whether the same facts or evidence are essential to the maintenance of the two actions. The *Mazzola* Court specifically stated:

"In the application of the doctrine of *res judicata,* if it is doubtful whether a second action is for

---

[1] *Gose v Monroe Auto Equipment Co,* 409 Mich 147, 160; 294 NW2d 165 (1980). See also *Martin v Michigan Consolidated Gas Co,* 114 Mich App 380, 383; 319 NW2d 352 (1982); *Carter v SEMTA,* 135 Mich App 261, 263; 351 NW2d 920 (1984), lv den 422 Mich 881 (1985).

[2] 54 Mich App 608, 613-614; 221 NW2d 406 (1974).

the same cause of action as the first, the test generally applied is to consider the identity of facts essential to their maintenance, or whether the same evidence would sustain both. If the same facts or evidence would sustain both, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other." [*Mazzola, supra,* pp 613-614, quoting 30A Am Jur, Judgments, § 365, pp 407-408.]

Defendants on appeal argue that plaintiff has merely changed the names of his claims from breach of an express contract to negligence and breach of an implied contract, and that each claim arises out of ILIC's refusal to pay the beneficiaries under the new policy due to Vutci's misrepresentations concerning his health. After reviewing the factual situations that underlie each of the claims asserted by plaintiff, we disagree.

Defendants are correct in asserting that the federal court breach of contract action was based on ILIC's refusal to pay the beneficiaries under Vutci's new insurance policy. In that action, plaintiff's claim did not involve the transaction that led to the cancellation of Vutci's old policy or even the transaction that led to the creation of the new policy. The basis for plaintiff's claim was merely the occurrence of ILIC's refusal to pay on the new policy following Vutci's death.

ILIC then defended its refusal to pay on the new policy by pointing to the misrepresentations made by Vutci in applying for the new policy. ILIC's defense in the federal court breach of contract action arose out of the transaction surrounding Vutci's actual application for the new policy.

Therefore, we find that the prior action, at most, arose out of Vutci's actual application for the new policy.

The present action, on the other hand, arises out of the transaction involving the cancellation of Vutci's old insurance policy and Adams' persuading him to attempt to apply for a new policy. In the present action, plaintiff is not asserting any contractual rights under the new policy. Plaintiff is merely claiming that defendant Adams, and defendant ILIC by not properly supervising and training Adams, negligently persuaded Vutci to cancel his old, allegedly valid, incontestable life insurance policy and to attempt to apply for a new policy at age sixty-four when he was obviously in poor health. Plaintiff is also claiming that Adams had an implied contract with Vutci to properly assist him in procuring adequate insurance coverage and that her actions in persuading Vutci to cancel his old policy and to attempt to obtain a new one at a time when he was obviously in poor health constituted a breach of this implied contract. As with the negligence claim, the facts surrounding this implied contract claim do not include Vutci's subsequent, actual application for the new policy and do not involve ILIC's contractual obligations under the new policy.

Therefore, we conclude that, for purposes of the doctrine of res judicata, plaintiff's breach of contract claim in the prior federal court action did not arise out of the same transaction as plaintiff's negligence and implied contract claims in the present action. In reaching this conclusion, we note that this is not the type of factual situation where this Court has traditionally applied the "broad" view of the res judicata doctrine to bar a subsequent action that arises out of the same transaction. This Court has applied the "broad"

view in cases where the plaintiff has received a physical or pecuniary injury as the result of a single incident and has then attempted to raise different theories of recovery in separate actions.[3]

In the within case, however, plaintiff has been injured as the result of two separate incidents. In the first action, plaintiff was asserting a claim based on the injury sustained by the beneficiaries under the new policy when ILIC refused to pay on that new policy. In the present action, plaintiff is asserting claims based on the injury sustained by Vutci when Adams and, vicariously, ILIC persuaded him to cancel his old insurance policy and to attempt to apply for a new policy. We believe that extension of the "broad" application of the procedural doctrine of res judicata, which is aimed only at obtaining efficiency in the judicial system, is not appropriate in such a situation. Therefore, we find that plaintiff is not precluded from making his present claims by application of the doctrine of res judicata based on the federal court's grant of summary judgment to ILIC in the prior action.

We also find that the federal district court's denial of plaintiff's motion to amend his pleadings to include his allegations of negligence and breach of an implied contract against Adams does not provide a basis for the application of res judicata to the allegations asserted by plaintiff in the present case. Judge Cohn denied plaintiff's motion to amend based on his finding that plaintiff's attempt to add Adams "came too late in the day" and would destroy the total diversity necessary for federal court jurisdiction. In rendering his order, Judge Cohn did mention that plaintiff claimed that he had not discovered Adams' dealings with Vutci on the old policy until October 22, 1984. In

[3] See *Carter, supra* (one incident of allegedly wrongful discharge); *Martin, supra* (one incident of allegedly wrongful utility termination).

addition, Judge Cohn expressly pointed out the distinct nature of plaintiff's claims against Adams which related only to Adams' dealings with Vutci and not ILIC's contractual obligations under the new policy. He expressly concluded that "whatever wrong the agent committed, if any, must be decided in a different case than this one" and then denied plaintiff's motion to amend *without prejudice.*

This Court has held that when a motion to amend a complaint is denied because of undue delay, such a denial is not considered a decision on the merits for purposes of the doctrine of res judicata.[4] It is clear that Judge Cohn did not deny plaintiff's motion to amend based on a finding that plaintiff's allegations concerning Adams' conduct in dealing with Vutci were frivolous. Thus, we conclude that the denial of plaintiff's motion to amend was not a decision on the merits and, therefore, the application of the doctrine of res judicata based on the denial of the motion would be inappropriate.

In fact, Judge Cohn's statements in the order denying plaintiff's motion to amend support our conclusion that plaintiff's present claims do not arise out of the same transaction as plaintiff's claims in the federal court action. The order reveals that Judge Cohn did not address any of the facts surrounding Adams' dealings with Vutci in persuading him to cancel his old policy and to attempt to apply for a new policy. In the same order, Judge Cohn clearly granted ILIC's motion for summary judgment solely on the basis of the material misrepresentations made by Vutci when he actually filled out an application for a new policy. As previously noted, Judge Cohn expressly

---

[4] *Martin, supra,* p 383.

perceived plaintiff's claims relating to the dealings of ILIC's agent Adams with Vutci as arising out of a separate transaction or occurrence that had to be addressed in a different case.

Judge Cohn's order, as described above, also provides no basis for the application of the doctrine of collateral estoppel to plaintiff's present action. The findings of "undisputed" facts made by Judge Cohn in granting ILIC's motion for summary judgment are either background facts admitted by plaintiff in the present action or facts concerning the material misrepresentations made by Vutci in actually applying for the new policy. Nowhere in Judge Cohn's findings are the facts surrounding Adams' dealings with Vutci discussed. In fact, Judge Cohn's findings do not even discuss the existence of Vutci's old policy or his decision to try to obtain a new policy. Judge Cohn's findings only begin at the point in time where Vutci is actually applying to ILIC for his new policy. Thus, we conclude that none of the material factual or legal issues relevant to plaintiff's present claims were actually litigated in the prior federal court action. Therefore, we find that the doctrine of collateral estoppel does not apply to the issues raised by plaintiff in the present action and does not provide a basis for granting defendants' motion for accelerated judgment in this matter.

Next, plaintiff argues that the statute of limitations does not bar his claims against defendants in the present action. Although plaintiff admits that the three-year statute of limitations period applicable to the claims of negligence and implied contract brought in this action[5] has run, he argues that the statutory period was extended under MCL 600.5852; MSA 27A. 5852, which provides:

---

[5] MCL 600.5805(8); MSA 27A.5805(8).

If a person dies before the period of limitations
has run or within 30 days after the period of
limitations has run, an action which survives by
law may be commenced by or against the executor
or administrator of the deceased person or the
claim may be proved as a debt against the estate
of the deceased person, as the case may be, at any
time within 2 years after letters testamentary or
letters of administration are granted, although the
period of limitations has run, subject to the limita-
tions provided in section 20 of chapter 8 of Act No.
288 of the Public Acts of 1939, being section 708.20
of the Compiled Laws of 1948. But no executor or
administrator shall bring an action under this
provision unless he commences it within 3 years
after the period of limitations has run.

Since plaintiff was not granted letters of admin-
istration until early 1985, he asserts that this
action was filed within the extended statutory
period.

In *Hawkins v Regional Medical Laboratories,
PC*,[6] the Michigan Supreme Court discussed when
the extension of the statutory period provided by
MCL 600.5852; MSA 27A.5852 applies. The *Haw-
kins* Court concluded that the statute gives the
fiduciary an additional two years from the date of
issuance of letters of administration in which to
bring suit on an action which accrued to the
decedent within his lifetime provided that, in any
event, the fiduciary brings suit not more than
three years after the limitation period has run.

Applying the *Hawkins* analysis to the within
case, we find that MCL 600.5852; MSA 27A.5852
applies in this situation to extend the statute of
limitations period. First, we find that an action
based on the alleged negligence of Adams and ILIC
and on the alleged breach of implied contract by

[6] 415 Mich 420; 329 NW2d 729 (1982).

Adams accrued to Vutci during his lifetime. In March, 1979, Vutci, based on Adams' dealings with him, cancelled his valid, old life insurance policy and began paying premiums on the new policy which was eventually approved by ILIC based on Vutci's misrepresentations. In March, 1979, Vutci could allege that Adams and ILIC owed him a legal duty in dealing with him, that they had breached this duty, that their breach of this duty had proximately caused him the injury of cancelling his valid, old life insurance policy and replacing it with a voidable new policy, and that he had suffered damages, since he had made premium payments on the voidable new policy. Thus, at this point, all the elements of a cause of action had occurred and could have been alleged by Vutci in a proper complaint, and the cause of action accrued to Vutci.[7]

Since the cause of action accrued in March, 1979, the three-year period of limitation began to run at this point. Vutci died in November, 1980, while the statutory period was still running. The statutory period did not run until March, 1982. Thus, pursuant to MCL 600.5852; MSA 27A.5852, a person who subsequently was granted letters of administration for Vutci's estate could bring suit within the statutory period by filing suit within two years of receiving the letters of administration, but, in any event, no later than March, 1985. Thus, we conclude that plaintiff, who was granted letters of administration in the beginning of 1985 and filed this action on January 22, 1985, brought this suit within the statutory period. Therefore, the running of the period of limitation does not bar plaintiff's present action and does not provide

---

[7] See *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146, 150; 200 NW2d 70 (1972).

a basis for granting defendants' motion for accelerated judgment in this matter.

Last, plaintiff argues that he has stated valid claims against defendants herein and the granting of summary judgment to defendants based on plaintiff's alleged failure to state a claim is inappropriate. We agree.

Defendants argue that Adams was exclusively the agent of ILIC and, therefore, did not owe a duty to Vutci to properly advise him on the adequacy of his insurance coverage. This argument is without merit. Despite the fact that Adams, pursuant to MCL 500.2220; MSA 24.12220, may be considered the agent of ILIC rather than the agent of Vutci, a finding that Adams owed a duty to Vutci for purposes of a negligence claim is not precluded. In fact, this Court has clearly indicated that an insurance agent has a duty to properly advise the insured when there is an established relationship between the agent and the insured and the agent has, in fact, advised the insured as to the adequacy of coverage.[8]

In the within action, plaintiff has alleged that Adams in fact advised Vutci as to the adequacy of his life insurance coverage in a face-to-face solicitation. Thus, we believe plaintiff has adequately asserted that defendant Adams, and vicariously defendant ILIC, owed a duty to properly advise Vutci in this situation. Therefore, we find that the granting of summary judgment based on plaintiff's alleged failure to state a claim is erroneous with respect to plaintiff's negligence claim.

Defendant Adams also argues that plaintiff has failed to state a valid claim based on her alleged breach of an implied contract. This argument is also without merit. In *Rocco v Dep't of Mental*

---

[8] *Stein v Continental Casualty Co*, 110 Mich App 410, 416-417; 313 NW2d 299 (1981), lv den 414 Mich 853 (1982).

*Health,*[9] this Court held that an implied contract exists where one engages or accepts beneficial services from another for which compensation is customarily made and naturally anticipated. In the instant case, plaintiff alleges that Vutci accepted services from Adams in allowing her to advise him on the adequacy of his insurance coverage. In addition, plaintiff alleges that Adams expected to receive a commission for the services she provided to Vutci, if Vutci made a purchase from her based on her advice. Thus, we conclude that plaintiff has adequately stated a claim that Adams breached an implied contract to provide Vutci with proper advice concerning his insurance coverage.

Defendant Adams goes on to argue that plaintiff's implied contract claim is precluded, since an express contract exists between the parties which covers the same subject.[10] This argument is without factual merit. Adams has completely failed to allege that any express contract exists covering her dealings with Vutci. The only express contract that exists in this situation is the contract of insurance between Vutci and ILIC. That express contract is not between Adams and Vutci and does not cover the services rendered by Adams to Vutci in advising him on his insurance coverage. Thus, we find that plaintiff has adequately stated a breach of implied contract claim and that this claim is not precluded by the existence of an express contract covering the same subject. Therefore, we conclude that the grant of summary judgment based on plaintiff's failure to state a claim is also erroneous as to plaintiff's breach of an implied contract claim.

[9] 114 Mich App 792, 799; 319 NW2d 674 (1982), aff'd 420 Mich 567 (1984).

[10] See *Steele v Cold Heading Co,* 125 Mich App 119, 203; 336 NW2d 1 (1983).

In conclusion, we find that the trial judge erred in granting defendants' motion for accelerated and summary judgment based on an application of the doctrines of res judicata and collateral estoppel, the running of the statute of limitations, or the failure of plaintiff to state a valid claim.

Reversed and remanded.

C. W. SIMON, J., concurred.

MacKENZIE, P.J. *(dissenting in part)*. I respectfully dissent from that portion of the majority opinion holding that plaintiff's claim against defendant Indianapolis Life Insurance Company (ILIC) is not barred by res judicata.

As noted by the majority, Michigan recognizes a broad application of the res judicata doctrine which bars not only claims actually litigated in a prior action, but also those claims arising out of the same transaction which the plaintiff could have brought but did not. *Gose v Monroe Auto Equipment Co,* 409 Mich 147; 294 NW2d 165 (1980). The majority concludes that the facts before us present two distinct transactions: first, the cancellation of Vutci's old policy and Adams' persuading him to apply for a new policy and, second, Vutci's application to ILIC for the new policy. The majority then holds that because the only subject matter of plaintiff's first suit was the second of these "transactions," plaintiff is not barred from raising claims relating to the first "transaction" in the instant suit.

In my opinion, this analysis places an overly narrow gloss on the concept of "same transaction." The problem lies in the premise that the test as to whether two claims arise out of the same transaction is whether the same facts or evidence are essential to both actions. See *Mazzola v Vineyard*

*Homes, Inc,* 54 Mich App 608, 613-614; 221 NW2d 406 (1974), cited by the majority. This is a test for determining *identity* of claims, i.e., whether the plaintiff is simply giving one cause of action two denominations in two different lawsuits. *Mazzola, supra,* p 613.

Application of the *Mazzola* test in this case is fine as far as it goes. I would agree that plaintiff stated distinct causes of action in his two lawsuits. Nevertheless, the fact that plaintiff has stated distinct claims does not end the inquiry. This determination, without more, does not address the broad view of res judicata, i.e., whether the plaintiff is raising in a second suit an issue which *could have* been raised in a prior suit.

Stripped to their essentials, the two "transactions" isolated by the majority are (1) a plan to defraud the insurer and (2) completing the paperwork necessary to effectuate the plan. In my view, these are not discrete "transactions" at all, but instead are separate claims based on different phases of a single transaction. Since all claims against ILIC based on this transaction could have been raised by plaintiff in his first suit, the claims against ILIC in this suit are barred by principles of res judicata. Accordingly, I would affirm the trial court's grant of accelerated judgment as to defendant ILIC.